THE STATE *v.* AUGUSTUS HOLMES.

In a case where the list of registered voters of a county was in the hands of the military authorities, and the proper civil officers for drawing a jury were unable to procure a copy of such list : *Held,* that the order of September 13, 1867, requiring jurors to be registered voters, did not apply.

Where a prisoner had already accepted as jurors three colored persons, *held,* that he had no right to challenge a fourth juror when tendered, on the ground that *he* was a colored person.

(*State* v. *Arthur,* 2 Dev. 217; *State* v. *Cockman,* 2 Win. 95, cited and approved.)

MURDER, tried before *Buxton, J.,* at Spring Term 1868 of the Superior Court of EDGECOMBE.

STATE *v.* HOLMES.

The counsel for the plaintiff moved to quash the bill of indictment, and assigned therefor the following reasons, viz:

1. " That it was not found by a grand jury drawn from the registered voters of the county, but from a list of the good and lawful men of the county, consisting of white freeholders only."

2. " That it was not found by a grand jury drawn from the list of *citizens assessed for taxes and who had paid taxes for the current year.*"

The Attorney General admitted that the grand jury had been drawn in accordance with the laws unqualified by military orders, and examined as witnesses the Chairman of the County Court and the Sheriff of the county, who proved that before drawing the jury list, they had applied personally and by letter to the military head quarters, for a list of the registered voters of the county, and that they had failed to obtain it; that such list was taken by, and was still in the hands of the military authorities, and that they had been and were still unable to procure a copy, and that without such copy they were unable to ascertain who were the registered voters of the county.

The motion to quash was therefore overruled, and the prisoner excepted.

A special *venire* of fifty *good and lawful men* was ordered to be summoned to try the case. The Sheriff returned twenty-five whites and twenty-five colored men as jurors.

The prisoner accepted three colored jurors, and they were sworn in. He then challenged one Camper, a juror, on the ground that he was a colored man. This cause of challenge was overruled, and the prisoner challenged him peremptorily. The prisoner made but *twelve* peremptory challenges.

After a verdict of guilty, there was a rule for a new trial, which was discharged, and the prisoner appealed.

*Attorney General* for the State.

No counsel for the prisoner.

BATTLE, J. The case, as it appears in the bill of exceptions filed by the prisoner, presents two questions, the first of which relates to the drawing of the grand jury, and the second to the prisoner's challenge of a petit juror.

1. The prisoner's counsel moved to quash the bill of indictment, because the grand jury by which it was found was not drawn in accordance with the Military orders of the 30th of May, and the 13th of September, 1867. The second section of the first of those orders, prescribes as follows: " All citizens assessed for taxes and who shall have paid taxes for the current year are qualified to serve as jurors. It shall be the duty of the proper civil officers charged with providing lists of jurors, to proceed within their several jurisdictions, without delay, and ascertain the names of all qualified persons, and place them on the jury lists, and from such revised lists, all jurors shall be hereafter summoned and drawn in the manner required by law."

The second order relates to and modifies the first, so as to make it read as follows: " All citizens assessed for taxes, and who shall have paid taxes for the current year, and who are qualified, and have been and may be duly registered as voters, are hereby declared qualified to serve as jurors." It is manifest that the effect of this modifying order is to prevent a person from being competent as a juror merely on account of his being a tax payer; he must have the additional qualification of having been duly registered as a voter. It appears from the case, that " the proper civil officers, charged with providing lists of jurors," attempted to comply with the requirements of the order, but were unable to do so because they could not obtain from the military authorities, in whose custody they were, the lists of the registered voters. We cannot suppose, for a moment, that the military authorities intended that the whole administration of the criminal law should be suspended, because of its not being convenient for them at the time to furnish those lists, and we, therefore, think that the Court acted right in directing a grand jury to

be drawn in the usual manner, according to the laws of the State.

2. The second question is, whether the prisoner is entitled to a *venire de novo* as a matter of right, because of the Court having overruled his challenge for cause to a person tendered to him as a juror, and whom he then challenged peremptorily, withal, however, accepting a jury before his peremptory challenges were exhausted. It appears from the record that a special *venire* of fifty good and lawful men were ordered to be summoned to try the case, and that thereupon the Sheriff returned twenty-five whites and twenty-five colored men as jurors. In forming the traverse jury, three colored jurors were tendered to and accepted by the prisoner, but upon the tender of the fourth he was objected to on account of his color; and the objection was overruled and he was then challenged peremptorily. The overruling of this objection is the ground of the application for a *venire de novo*. It is manifest that the special *venire* was summoned in accordance with the requirements of the military orders to which we have referred, and the prisoner insisted upon his right to have them so summoned, as appears not only from his acceptance of three colored jurors, but also from his motion to quash the bill of indictment, because it had not been found by a grand jury selected from a list made out by the Justices of the County Court in obedience to such orders. Why the motion to quash was not sustained, we have already seen. When the Superior Court, at which the prisoner was tried, sat, the difficulty, it seems, was removed, and the prisoner clearly showed his acquiescence, if not his desire, in the summoning of colored as well as white jurors on the special *venire*. Having done so, we think he is not at liberty to object for cause to a juror merely on account of his color. This makes it unnecessary for us to notice the effect of the circumstance that the traverse jury was formed before the prisoner's peremptory challenges were exhausted. See *State* v. *Arthur*, 2 Dev. 217; *State* v. *Cockman*, 2 Win. 95.

It must be certified to the Superior Court for the County of Edgecombe that there is no error in the record.

PER CURIAM.                                    No error.